D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and SHOSHANA WALTER, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief.  The Center for Investigative Reporting ("CIR") and Shoshana Walter (collectively "Plaintiffs") seek processing and release of agency records requested from Defendant the United States Department of Labor ("DOL").

2.      On May 6, 2019, Plaintiffs submitted a FOIA request ("the Request") to DOL's Wage and Hour Division ("WHD") seeking disclosure of "any wage and hour complaints filed against the employer 'Synanon' from 1960 through 1989."

3.      On June 24, 2019, DOL denied Plaintiffs' request in full, providing a *Glomar*

response[1] and not asserting any exemption.

4.     On July 9, 2019, Plaintiffs sent an administrative appeal letter to Defendant.

5.     On September 10, 2019, DOL sent a response letter to the administrative appeal letter, remanding the Request to WHD.

6.     To date, Defendant has failed to comply with FOIA's statutory deadlines by not issuing a final determination as to the Request.

7.     Defendant has improperly issued a *Glomar* response[2] by failing to assert an accompanying FOIA exemption.  It has also waived its right to a *Glomar* response where records have been publicly acknowledged.

8.     Plaintiffs have exhausted all other administrative remedies.

9.     The requested records are of significant public interest because they relate directly to Synanon, an organization whose activities have received substantial media attention for decades. *See, e.g.*, Robert Lindsey, *A Changed Synanon the Subject of Inquiry*, N.Y. TIMES, Dec. 10, 1978, https://www.nytimes.com/1978/12/10/archives/a-changed-synanon-the-subject-of-inquiry-a-changed-synanon-finds.html.

10.    The requested records (historical labor complaints against Synanon) are of particular interest to Plaintiffs because Synanon has influenced contemporary drug rehabilitation programs,

---

[1] The term "*Glomar* response" originates from the Central Intelligence Agency's ("CIA") refusal to confirm or deny the existence of records in response to a FOIA request relating to the *Hughes Glomar Explorer*, a ship used in a classified [CIA] project used to 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications for United States military and intelligence experts. *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1171 (D.C. Cir. 2011), quoting *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981).  Usually, *Glomar* responses have been reserved for withholding national security and classified records.
[2] "*Glomar* responses are an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information." *Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting *Roth*, 642 F.3d at 1178).

whose unlawful labor practices have been covered by CIR and other media outlets.  *See* Amy Julia Harris & Shoshana Walter, *She said she'd free them from addiction. She turned them into her personal servants.*, REVEAL, May 21, 2018, https://www.revealnews.org/article/drug-users-got-exploited-disabled-patients-got-hurt-one-woman-benefited-from-it-all/; Maria Szalavitz, *The Addiction Treatment and Rehab Industries Need to Clean Up Their Act*, PACIFIC MAG., Oct. 14, 2016, https://psmag.com/news/the-addiction-treatment-and-rehab-industries-need-to-clean-up-their-act (updated June 14, 2017).

11.     Plaintiffs now ask the Court for an injunction finding the agency waived its *Glomar* objection, which was improperly asserted and requiring DOL to promptly release the records.

## JURISDICTION

12.     The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

13.     Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402. Plaintiff CIR has its principal place of business in this district.  Plaintiff Shoshana Walter is domiciled in this district.

14.     Assignment to the Oakland Division is proper pursuant to Local Rules 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where Plaintiff CIR's principal place of business is located and most actions in this case occurred.

## PARTIES

15.     Plaintiff CIR publishes *Reveal*, an online news site, at revealnews.org, and *Reveal*, a weekly public radio show with approximately 1 million listeners per week.  Founded in 1977 as the first non-profit investigative news organization, CIR has received multiple awards for its reporting.

CIR is a non-profit established under the laws of the State of California, with its primary office in Emeryville, California.

16.    Plaintiff Shoshana Walter is a staff reporter for *Reveal* and an employee of CIR.

17.    Defendant DOL is a department of the executive branch of the U.S. government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).  WHD is a component of DOL.  DOL has its headquarters in Washington, D.C., and offices all over the country, including in Oakland and San Francisco, California.  WHD also has a regional office in San Francisco, California.

## FACTUAL BACKGROUND

18.    WHD is the component of DOL responsible for "administering and enforcing laws that establish minimally acceptable standards for wages and working conditions."  WHD, *Fact Sheet: Basic Information*, https://www.dol.gov/whd/regs/compliance/whd_fs.pdf.

19.    WHD's stated mission is "to promote and achieve compliance with labor standards to protect and enhance the welfare of the Nation's workforce."   WHD, *About Us*, https://www.dol.gov/whd/about/mission/whdmiss.htm.   As part of its mandate, WHD conducts employer investigations, many of which are prompted by complaints from employees or third parties. WHD,        *Fact        Sheet        #44:        Visits        to        Employers*, https://www.dol.gov/whd/regs/compliance/whdfs44.htm.

20.    Synanon was founded in 1958 as a non-profit organization, and initially offered drug rehabilitation programs at several locations in California and in other states.  Matt Novak, *Synanon's Sober Utopia: How a Drug Rehab Program Became a Violent Cult*, GIZMODO, Apr. 15, 2014, https://paleofuture.gizmodo.com/synanons-sober-utopia-how-a-drug-rehab-program-became-1562665776.

21.    Federal government agencies have publicly acknowledged investigations into Synanon's labor practices over many decades.  In 1974, Synanon sought recognition from the

Internal Revenue Service ("IRS") as a religious organization, and in 1980, changed its name to The Synanon Church. *Synanon Church v. Comm'r*, 57 T.C.M. (CCH) 602 (T.C. 1989). The IRS revoked Synanon's tax-exempt status in 1989 after the organization conceded to the IRS that many of its employees were "serving without compensation." *Id*.

22.     In 1989, the U.S. Tax Court ordered Synanon to pay retroactive taxes, affirming that it no longer operated as a nonprofit. *Synanon Church v. U.S.*, 557 F. Supp. 1329, 1331 (D.D.C. 1983) ("determined that it was not operated exclusively for any exempt purpose and that its net earnings inured to the benefit of private individuals."). The court listed irregularities in Synanon's compensation scheme: "Most individuals who had lived and worked in Synanon for more than three years received a monthly salary which averaged $34 per month," including during the calendar year where Synanon's executive committee elected to give founder "[Charles] Dederich $500,000 cash immediately as a pre-retirement bonus." *Id*.

23.     Synanon officials were also indicted by a federal grand jury on criminal conspiracy charges in 1985. *U.S. v. Benjamin*, CR-F-86-1-REC, 1986 WL 15568, at *1 (E.D. Cal. Nov. 4, 1986). The indictment cited, in part, "the diversion of Synanon money into private hands, salaries, and bonuses" as the criminal activities alleged. Merrill Hartson, *Indictment Charges Nine Former, Present Synanon Members with Conspiracy*, AP News, Oct. 2, 1985, https://www.apnews.com/339b83c13262b0fd7e3d774f527791ea.

24.     Additionally, the Federal Communications Commission ("FCC") noted that Synanon claimed the "Department of Labor investigation of Synanon labor practices had been staged" but its ruling suggested that comment was without merit. *In Re Application of Am. Broad. Companies, Inc. for Renewal of License of Station KGO-TV S.F., Cal.*, 90 F.C.C.2d 395, 397 (F.C.C. 1982).

25.     Two WHD investigators have also confirmed to CIR that WHD received complaints about Synanon's labor practices.

26.     The labor activities of Synanon and complaints against the organization have also been the topic of media attention long after the organization dissolved in 1991. *See, e.g.*, Matt Novak, *Synanon's Sober Utopia: How a Drug Rehab Program Became a Violent Cult*, GIZMODO, Apr. 15, 2014, https://paleofuture.gizmodo.com/synanons-sober-utopia-how-a-drug-rehab-program-became-1562665776.

27.     In recent years, drug rehabilitation programs have followed tactics originally developed by Synanon, including requiring participants to "work . . . hours a day for no pay." Amy Julia Harris & Shoshana Walter, *She said she'd free them from addiction. She turned them into her personal servants.*, REVEAL, May 21, 2018, https://www.revealnews.org/article/drug-users-got-exploited-disabled-patients-got-hurt-one-woman-benefited-from-it-all/; *see also* Maia Szalavitz, *The Cult That Spawned the Tough-Love Teen Industry*, MOTHER JONES, Oct. 2007, https://www.motherjones.com/politics/2007/08/cult-spawned-tough-love-teen-industry/.

28.     Ms. Walter, on behalf of CIR, has written about labor violations at these rehabilitation programs as well as similarities between these and Synanon's own program. *See id.* For her reporting, Ms. Walter was nominated for a Pulitzer Prize. *Finalist: Amy Julia Harris and Shoshana Walter of Reveal from The Center for Investigative Reporting*, PULITZER.ORG, https://www.pulitzer.org/finalists/amy-julia-harris-and-shoshana-walter-reveal-center-investigative-reporting.   These rehabilitation programs—and their similarities to Synanon—are of great public interest.

## PROCEDURAL BACKGROUND

29.     On May 6, 2019, Ms. Walter submitted a FOIA request to DOL on behalf of CIR seeking WHD records pertaining to wage and hour complaints filed against the employer Synanon. A true and correct copy of the Request is attached as Exhibit A.

30.     Plaintiffs sought a waiver of search and review fees on the grounds that the Ms. Walter

qualifies as a "representative of the news media" and that the records are not sought for commercial use.  5 U.S.C. § 552(a)(4)(A)(ii).

31.     Plaintiffs also sought expedited processing of the Request on the grounds that Ms. Walter is a "person primarily engaged in disseminating information" and there is a "compelling need" for these records in order to "inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v).

32.     Specifically, Ms. Walter requested "records of any wage and hour complaints filed against the employer 'Synanon' from 1960 through 1989."  Ms. Walter further requested "any response by the [DOL] to this complaint, including . . . correspondence with the complainant(s), internal correspondence about the case(s), case notes, and investigative reports."  *See* Exhibit A.

33.     On May 7, 2019, Ms. Walter received an e-mail response from DOL acknowledging the Request and assigning it tracking number 877627.  A true and correct copy of that email is attached as Exhibit B.

34.     On June 24, 2019, Ms. Walter received a response letter to the Request from the Washington, D.C. office of WHD, signed by Genise Coleman ("the Denial").  A true and correct copy of the Denial is attached as Exhibit C.

35.     The Denial consisted of a "*Glomar* response," and no responsive records were disclosed.  WHD indicated that the agency "can neither confirm nor deny that we do or did maintain the records you requested," and that "[a]s such, we are providing a *Glomar* response[.]"  *Id*.

36.     The Denial also denied Ms. Walter's request for a fee waiver as moot.  Since "[t]he processing costs incurred did not exceed the chargeable minimum," no processing fees were assessed.  *Id*.

37.     The Denial further denied Ms. Walter's request for expedited processing, stating that her "justification does not meet the . . . threshold" set forth in 29 C.F.R. 70.25(d)(1).  *Id*.

38.     On July 2, 2019, Plaintiffs sent an administrative appeal letter (hereinafter "the Administrative Appeal") to DOL regarding the Request.  A true and correct copy of that letter without attachments is attached as Exhibit D.

39.     In the Administrative Appeal, Plaintiffs stated that the *Glomar* response provided by WHD was improper for two reasons.  First, Plaintiffs explained that courts only permit an agency to issue a *Glomar* response where a FOIA exemption "applies in the first instance." *Id.*  But in this case, the Denial "did not provide a justified reason for withholding and did not cite a single FOIA exemption." Exhibit D.  Since WHD failed to assert *any* FOIA exemption in the Denial, a *Glomar* response is inappropriate.  Second, Plaintiffs explained that once "the existence or nonexistence of requested records has been officially and publicly disclosed" by a federal agency, a *Glomar* response is no longer justified. *Id.* (citation omitted).  Plaintiffs pointed out that "at least two federal agencies have publicly acknowledged investigations into Synanon's business practices, including allegations that the organization profited off of unpaid labor." *Id.*  Because federal agencies have publicly acknowledged the existence of these records, WHD may not issue a *Glomar* response.

40.     On September 10, 2019, DOL sent Plaintiffs a response letter from the Washington, D.C. office of the DOL signed by Raymond Mitten, Jr., acknowledging the Administrative Appeal and remanding it to WHD ("the Remand").  A true and correct copy of the Remand is attached as Exhibit E.  The Remand explained: "WHD's use of the *Glomar* response was improper because WHD did not identify a relevant FOIA exemption under which confirming or denying the records' existence would cause any cognizable harm." *Id.*  The Remand further specified that WHD would reply directly to Plaintiffs with its supplemental decision. *Id.*

41.     To date, WHD has failed to issue a response as per the Remand.

42.     More than 20 working days have passed since Plaintiffs submitted the Request on May 6, 2019; sent the Administrative Appeal on July 2, 2019; and received the Remand from DOL

on September 10, 2019.

43.     DOL has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i) and (ii), respectively, which require that an agency make determinations with respect to a request and an administrative appeal within 20 business days.

44.     Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

45.     Plaintiffs repeat and reallege paragraphs 1-44.

46.     DOL is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

47.     DOL has no lawful basis for declining to acknowledge the existence of the records requested by Plaintiffs under FOIA.

48.     DOL has improperly delayed the Request which warranted expedited processing.

49.     DOL has failed to act on Plaintiffs' request and appeal within the 20 business days required by FOIA.  *See* 5 U.S.C. § 552(a)(6)(A)(i) and (ii).  Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

50.     Plaintiffs are entitled to declaratory and injunctive relief compelling the expedited release and disclosure of the requested records.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs prays that this Court:

1.     Declare that Defendant DOL violated FOIA by failing to provide requested records in response to Plaintiffs' FOIA request, improperly issuing a *Glomar* response, and failing to notify Plaintiffs of a final determination as to the request and appeal;

2.     Declare that the documents sought by their FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

3.     Order Defendant DOL to expeditiously provide the requested documents to Plaintiffs within 20 business days of the Court's order;

4.     Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

5.     Grant Plaintiffs such other and further relief as this Court may deem just and proper.

DATED:  November 11, 2019

Respectfully submitted,

By: _____
D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Email: vbaranetsky@revealnews.org

Attorney for Plaintiffs